IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| FRANCES BATTELS and | ) | |
| REGINALD BILLUPS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:03-cv- 267-F |
| | ) | WO |
| SEARS NATIONAL BANK, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Frances Battels (hereinafter "Battels") and Reginald Billups (hereinafter "Billups") brought this lawsuit against defendant Sears National Bank (hereinafter "Sears") in an Alabama state court, alleging violations of the federal Fair Credit Billing Act (hereinafter "FCBA"), 15 U.S.C.A. §§ 1666-1666j, as enforced by the Truth in Lending Act (hereinafter "TILA"), 15 U.S.C.A. § 1640. Sears removed this action to this court pursuant to 28 U.S.C.A. §§ 1441 and 1446; invoking this court's jurisdiction under 28 U.S.C.A. § 1331 (federal question).

On July 25, 2003, Sears filed a motion to stay the proceedings pending arbitration under the Federal Arbitration Act (hereinafter "FAA"), 9 U.S.C.A. § 1-16 (Doc. # 11). In turn, on September 8, 2003, Plaintiffs Battels and Billups filed a motion seeking a jury trial on the question of whether agreements to arbitrate exist in this case (Doc. # 17). For the reasons to be discussed below, the court finds that the motion to stay is due to be GRANTED, and the motion for jury trial is due to be DENIED.

# I.  FACTS AND PROCEDURAL HISTORY[1]

The disputes in this case arise from the following credit card accounts held by Plaintiffs.

*Plaintiff Battels' Account.*

Battels opened a credit card account with Sears Roebuck and Company (hereinafter "SRC") in 1993.  The account was governed by a cardholder agreement that contained a broad change-of-terms provision allowing SRC "the right to change any term or part of the Agreement" after providing written notice of such changes to Battels (Doc. # 11, Decl. of Stephen P. McConnell, Ex. 1, ¶ 14).

Battels' account was transferred to Sears in March 1995.[2]  Battels was sent a notice that her account had been transferred and that the terms of her account were being changed. The notice was entitled "Important Notice for SearsCharge Customers in the States of AL, AK, AR and NC.  Change In Credit Terms" (Doc. # 11, Ex. 2), and informed Battels that her existing SearsCharge account was transferred from SRC to Sears, effective after her May 1, 1995 billing date.  The change-of-terms notice also included a broad change-of-terms provision allowing Sears "as permitted by law, . . . the right to change any term or part of the Agreement" after providing written notice of such changes to Battels (*Id.* at ¶ 14), and provided that the account would be "governed by, and interpreted in accordance with the

---

[1]  The statement of facts is based upon the evidence submitted by both parties.

[2]  Sears is a wholly owned subsidiary of Sears Financial Holding Company, which in turn is a wholly owned subsidiary of SRC.

laws of the State of Arizona and the United States . . ." (*Id*. at ¶ 15).

In September 1999, Battels received a written notice indicating that Sears intended to amend the Agreement to include, among other things, an arbitration provision (Doc. # 11, Ex. 3). The September 1999 notice also gave Battels the opportunity to reject the proposed amendments, including the arbitration provision:

> The changes to the terms governing your Account will become effective 30 days from your receipt of this notice, unless you notify us in writing before that date at Sears . . . In your written notice, please include your Account number and please state that you wish to reject the new Agreement. If you so notify us, you may pay any outstanding balance under the terms currently governing your Account. However, if you initiate a new purchase after notifying us, the changes to the terms governing your Account explained above and contained in the new agreement will become effective at the later of 30 days from your receipt of this notice or the time of the new purchase.

(*Id*.). Battles did not provide a written notice of rejection, and the proposed amendments, including the arbitration provision, became effective as provided in the notice. Moreover, Battels continued to make new purchases using the Sears account.

Battels' account was last amended in 2001. Again, written notice was sent to Battels of the proposed amendments and she was given an opportunity to reject the amendments. (*Id*. at Ex. 4). The Agreement, as amended in 2001, includes an entirely new arbitration provision, which states in relevant part:

> **Section 21. ARBITRATION.** Any and all claims, disputes or controversies of any nature whatsoever (whether in contract, tort, arising out of statute, or otherwise) arising out of, relating to, or in connection with: (a) this Agreement; (b) any prior credit card agreement you may have had with us, Sears, or with any of their predecessors, successors, and assigns; (c) the application for and statements, disclosures, or other documents or communications relating to the

3

Account; (d) the relationships which result from this Agreement or any prior credit card agreement, including any relationship with us or Sears; (e) the establishment, operating, handling or termination of the Account; (f) any transaction or attempted transaction relating to the Account; or (g) the validity, scope or enforceability of this arbitration section or this Agreement or any prior credit card agreement (the immediately preceding subsections (a) through (g) shall be referred to in this section, collectively as "claims"), shall be resolved, upon your election or our election, by final and binding arbitration before a single arbitrator, on an individual basis without resort to any form of class action, except that each party retains the right to seek relief in a small claims court, on an individual basis without resort to any form of class action, for claims within the scope of the jurisdiction of the small claims court.

Arbitration may be elected at any time, regardless of whether a lawsuit has been filed or not, unless such a lawsuit has resulted in a judgment or the other party would suffer substantial prejudice as a result of the delay in demanding arbitration. The arbitrator shall be a lawyer or retired judge with not less than 15 years experience in the practice of law. This arbitration section will not apply to any individual claims you filed in a lawsuit prior to the effective date of this Agreement, including individual claims that are later asserted in such a lawsuit, nor to the claims of a class certified prior to the effective date of this Agreement. The arbitration section will apply to all other claims, including class claims where a class has not yet been certified, even if the facts and circumstances upon which the claims are based existed before the effective date of this Agreement. This arbitration provision does not prevent either party from seeking interim injunctive relief from a court in order to preserve the status quo or to protect assets until the arbitration has commenced and the arbitrator has an opportunity to consider the matter of interim relief.

Arbitrations shall be administered by the National Arbitration Forum ("NAF") in accordance with its Code of Procedure in effect at the time the claim is filed. . . . If you object to the NAF, you may propose an alternative arbitrator or arbitration organization to us. We will either accept your proposal or provide you with a list of three qualified arbitrators or arbitration organization from which you shall select one.

Any arbitration which you attend will take place at a location within the federal judicial district that includes your billing address at the time the claim is filed. We will advance any fees required of you by the NAF or any alternative arbitrator or arbitration organization if you send us a written

4

request.  The arbitrator shall apply relevant substantive law and applicable statutes of arbitration, honor claims of privilege recognized at law, and shall provide written, reasoned findings of fact and conclusions of law.  The arbitrator may order the refund of any fees advanced by us only if the arbitrator determines that your claims or defenses were frivolous.

The arbitration section of this Agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1, et seq. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction.  This arbitration section shall survive repayment of your loan or extension of credit and termination of your Account.  If any portion of this arbitration section is deemed invalid or unenforceable, it shall not invalidate the remaining portions of this arbitration section.  This arbitration section shall inure to the benefit of and be binding on each of the persons and entities mentioned in this section.

**YOU UNDERSTAND AND AGREE THAT, UNDER THIS AGREEMENT, IF ARBITRATION IS CHOSEN BY YOU OR US, YOU WILL NOT HAVE THE RIGHT TO GO TO COURT (EXCEPT FOR SMALL CLAIMS COURT) ON THAT CLAIM OR TO HAVE A JURY TRIAL ON THAT CLAIM.  IF ARBITRATION IS CHOSEN, YOU ALSO WILL NOT BE ABLE TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO THAT CLAIM AND YOU WILL HAVE ONLY THOSE RIGHTS THAT ARE AVAILABLE IN ARBITRATION. THE DECISION OF THE ARBITRATOR WILL BE FINAL AND BINDING EXCEPT AS PROVIDED IN THE FEDERAL ARBITRATION ACT.**

(*Id*. at Ex. 4, ¶ 21).  Although given the opportunity to do so, Battels did not provide a written notice of rejection to these new amendments, including the arbitration provision.  Moreover, Battels continues to maintain a balance on this account.[3]

---

[3]  All proposed amendment notices were mailed to the same address to which Battels' billing statements were sent.  Battels has made payments in response to these billing statements, thereby indicating that the mail reached the intended recipient.  Further, Battels has provided notice to Sears rejecting certain amendments that were proposed after she filed the instant action.  Sears did not receive any written notice of rejection from Battels regarding any of the  proposed amendments at

*Plaintiff Billups' Account*

Billups opened a credit card account with SRC in 1994.  The account was governed by a cardholder agreement that contained a broad change-of-terms provision allowing SRC "the right to change any term or part of the Agreement" after providing written notice of such changes to Billups. In 1995, Billups' account was transferred to Sears, and Billups was notified that Sears was the new issuer of this account (Doc. # 11, McConnell Decl. ¶ 16, Ex. 6).

Between 1995 and 2002, Sears mailed Billups amendments to that agreement which Billups did not reject.  For example, in September 1999, Sears mailed Billups written notice of a proposed amendment which included an arbitration provision  (*Id*. at Ex. 7).[4]  Despite Billups opportunity to do so, he did not send written notice rejecting this amendment, thus the amendment, including the arbitration provision became effective after 30 days after his receipt of the notice.   Billups continued to make new purchases using the Sears account.

The arbitration provision for Billups' cardmember agreement was last amended in 2002.  Again, Billups was sent written notice of the proposed amendments and was given an opportunity to reject the amendments.  Billups did not reject the amendments, and thus they

_____

issue.

[4] Similar to Battels' agreement, this amendment also includes a "GOVERNING LAW" section which provides that the Agreement and account "will be governed by and interpreted in accordance with the laws of the United States and, to the extent governed by state law, the law of the State of Arizona, regardless of where you live or where you use the [a]ccount" (*Id*. at Ex. 7, Section 22).

became effective.  The current arbitration provision is substantially the same as the one recited applicable to Battles (*Id*. at Ex. 8).  Billups continues to carry a balance on the Sears account.[5]

*This Litigation*

On January 30, 2003, Plaintiffs filed this lawsuit–individually and on behalf of all other similarly situated holders of personal credit cards issued by Defendant– in the Circuit Court for Lowndes County, Alabama (Doc. # 1, Compl.).  Plaintiffs claim that Defendant is violating the FCBA, 15 U.S.C.A. § 1666c , and the regulations promulgated to enforce the statute, 12 C.F.R. § 226.10, by not posting payments received after 1:00 p.m. to a customer's account until the following day.  Plaintiffs seek injunctive relief, compensatory and punitive damages, and demand a jury trial (*Id*.).

In March 2003, Defendant removed this lawsuit to federal court under 28 U.S.C.A. §§ 1441 and 1446, and filed a motion pursuant to the FAA,  9 U.S.C.A. § 1-16, to stay these proceedings in favor of arbitration.  Plaintiffs responded with a motion for a jury trial on the question of whether an arbitration agreement exists between themselves and Defendant.

## II.  JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to 28

---

[5]  Alike Battels, all proposed amendment notices were mailed to the same address to which Billups' billing statements were sent.  Billups has made payments in response to these billing statements, thereby indicating that the mail reached the intended recipient.  Further, Billups has provided notice to Sears rejecting certain amendments that were proposed after he filed the instant action.  Sears did not receive any written notice of rejection from Billups regarding any of the proposed amendments at issue in this case.

U.S.C.A. § 1331 (federal question).  The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations supporting both.

### III.   STANDARD OF REVIEW

Pursuant to the Federal Arbitration Act ("FAA"), a written arbitration "provision in any . . . contract evidencing a transaction involving commerce . . [is] valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C.A. § 2 (1991).  The effect of Section 2 is "to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."  *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S.1 (1983).  Section 3 provides for the stay of proceedings in federal district courts when an issue in the proceedings is referable to arbitration.  *See* 9 U.S.C.A. § 3.  Section 4 provides for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement.  *See* 9 U.S.C.A. § 4.

The FAA establishes "'a federal policy favoring arbitration.'"  *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (quoting *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24).  Indeed, under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24-25. *See also Ruby-Collins, Inc. v. City of Huntsville, Alabama*, 748 F.2d 573, 576 (11th Cir. 1984) ("[F]ederal policy requires that we construe arbitration clauses generously, resolving all doubts in favor of arbitration.").  Therefore, courts must rigorously enforce agreements to

8

arbitrate.  *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985).

Notwithstanding this presumption favoring arbitration, the FAA prohibits the enforcement of an arbitration clause that is invalid "upon such grounds as exist at law or in equity for the revocation for any contract."  9 U.S.C.A. § 2.  Section 2 "gives states [ ] method[s] for protecting consumers against unfair pressure to agree to a contract with an unwarranted arbitration provision."  *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281 (1995).

While federal policy favors arbitration, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *United Steelworkers v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582 (1960).  Accordingly, "[t]he question whether the parties have submitted a particular dispute to arbitration, *i.e.,* the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'"  *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002) (quoting *AT & T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986)).  Issues to be decided by the court "include certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy."  *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 451-53 (2003).

As a general rule, when considering these "gateway issues," the court "may consider only issues relating to the making and performance of the agreement to arbitrate," and not

9

issues relating to the making of the contract generally. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967); *John B. Goodman Ltd. P'ship v. THF Constr., Inc.*, 321 F.3d 1094, 1095-96 (11th Cir. 2003) (per curiam). "*Prima Paint's* mandate is that challenges to the validity of the contract as a whole must be presented to the arbitrator." *Rollins, Inc. v. Foster*, 991 F. Supp. 1426, 1431 (M.D. Ala. 1998).

There is an exception to the *Prima Paint* rule, however, for "cases where not merely the enforceability, but the initial formation or existence of a contract, including a disputed arbitration clause is legitimately called into question, and must be decided by the court." *Rainbow Investments, Inc. v. Super 8 Motels, Inc.*, 973 F. Supp. 1387, 1390 (M.D. Ala. 1997). Cases in which there is no signed contract and in which one party denies the existence of an agreement fall into this category. The Eleventh Circuit has explained:

> Under normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration. Under such circumstances, the parties have at least presumptively agreed to arbitrate any disputes, including those disputes about the validity of the contract in general. Because the making of the arbitration agreement itself is rarely in issue when the parties have signed a contract containing an arbitration provision, the district court usually must compel arbitration immediately after one of the contractual parties so requests.
>
> The calculus changes when it is undisputed that the party seeking to avoid arbitration has not signed any contract requiring arbitration. In such a case, that party is challenging the very existence of *any* agreement, *including the existence of an agreement to arbitrate*. Under these circumstances, there is no presumptively valid general contract which would trigger the district court's duty to compel arbitration pursuant to the Act. If a party has not signed an agreement containing arbitration language, such a party may not have agreed to submit grievances to arbitration at all. Therefore, before sending any such

grievances to arbitration, *the district court itself* must first decide whether or not the non-signing party can nonetheless be bound by the contractual language.

*Chastain v. The Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992) (citations and footnotes omitted).  "In resolving these 'gateway issues,' the court applies ordinary state common law governing the formation of contract."  *Taylor v. First North Am. Nat'l Bank*, 325 F. Supp. 2d 1304, 1309-1310 (M.D. Ala. 2004) (citations omitted).

## IV.  DISCUSSION

In this case, the parties do not dispute whether Plaintiffs' claims are covered by the purported arbitration agreement.  Rather, the dispute is about the existence of an arbitration agreement in the first place and whether that agreement can be enforced.

Defendant's argument is plain.  It argues that the cardmember agreements include a valid, written agreement to arbitrate that clearly encompasses Plaintiffs' claims.  Therefore, Defendant argues, the court is required to stay this litigation and compel arbitration under the FAA.  9 U.S.C.A. §§ 3 & 4.

Broadly speaking, Plaintiffs make three classes of arguments in response.  First, they argue that no arbitration agreements exist.  Second, they argue that, even if the arbitration agreements did exist, federal law provides that it cannot be enforced because its provisions will prevent them from vindicating their statutory rights.  Third, they argue that the arbitration agreement cannot be enforced because its terms are unconscionable under Alabama law.

11

Interestingly, Plaintiffs Battels and Billups and the plaintiffs in *Lawrence v. Household Bank*, 343 F. Supp. 2d 1101 (M.D. Ala. 2004) (Thompson, J.) are represented by the same attorneys, and Plaintiffs' arguments in this matter– from their complaint to their opposition to Defendant's motion to stay– are practically identical to those raised in *Lawrence*. This court agrees with the holding in *Lawrence* thus, in this opinion, the court will frequently rely on the analysis used by Judge Thompson in *Lawrence*.

The court now proceeds to address Plaintiffs Battels and Billups' arguments in turn.

A.    *Existence of Arbitration Agreements*

Plaintiffs tender four arguments in support of their proposition that no agreement to arbitrate exists between them and Defendant. They argue that (1) there is no evidence that the cardmember agreements were mailed or delivered to them; (2) they were not given meaningful notice that the cardmember agreement contained an arbitration agreement; (3) there is no evidence that they assented to the cardmember agreement; and (4) Defendant's right to change the cardmember agreement unilaterally makes it unenforceable. Related to these issues is Plaintiffs' motion for a jury trial on the issue of whether an agreement to arbitrate was made.

1.    *Delivery of the Cardmember Agreements*

Plaintiffs argue that Defendant has not established that their cardmember agreements were ever mailed or delivered to them, and that, therefore no arbitration agreement exists between them and Defendant. This court has previously considered this very issue and held

that "[b]ecause this issue goes to Plaintiffs' assent to the cardmember agreement, the court, and not the arbitrator, is the proper party to resolve this dispute."  *Lawrence,* 343 F. Supp. 2d at 1110 (citing *Taylor*, 325 F. Supp. 2d at 1310).

As in *Lawrence*, 343 F. Supp. 2d at 1110, the court is persuaded that the totality of the evidence establishes that Defendant mailed the relevant cardmember agreements and change-of-terms notices, and that Plaintiffs received these documents.  "The law recognizes a rebuttable presumption that an item properly mailed was received by the addressee." *Id.* (citing *Konst v. Florida East Coast Ry.*, 71 F.3d 850, 851 (11th Cir. 1996)).  In this case, the declaration of Stephen P. McConnell, Project Manager for Defendant, indicates that the cardmember agreements and change-of-term notices were mailed to Plaintiffs as part of a routine process (Doc. # 11, McConnell Decl. ¶s 6 & 17).  Furthermore, the declaration states that all notices were mailed to the same address to which Plaintiffs' billing statements were sent, and Plaintiffs' have made payments in response to the billing statements, thereby indicating that the mail reached the intended recipients (*Id*. at ¶s 11 & 22).  Accordingly, the court can thus presume that Plaintiffs' received the agreements and subsequent changes in terms.

Moreover, in their own affidavits, neither Battels nor Billups actually deny that they received the agreements.  They merely state that when they applied for their cards, no one mentioned anything to them about arbitration or gave them "any written materials which called [their] attention to arbitration," and they state that "when [they] received [their] credit

card from [Defendant], nothing in anything [they] received with the card, or on the card itself, or on the envelope it came in, called [their] attention to any waiver of legal rights or remedies or the arbitration of disputes" (Battels Aff. ¶s 2, 3; Billups Aff. ¶s 2, 3). Further, Plaintiffs' affidavits generally speculate that they did not receive the mailing as an alternative to ignoring the mailing as "junk mail" (*Id*. at ¶ 4).[6] Accordingly, Plaintiffs bare assertions are insufficient to create a question of material fact on the issue of whether they assented to the arbitration provisions in the agreements, and this court– as in *Lawrence*– finds no ground to deny Defendant's motion on this basis.

> 2.   *Meaningful Notice*

Plaintiffs argue that no arbitration agreements exist because they were not given meaningful notice that their cardmember agreements or change-of-terms notices contained arbitration provisions. The gist of Plaintiffs' argument is that the arbitration provisions in their agreements were in fine print. This argument is unpersuasive because "arbitration clauses need not be specially marked or singled out in some way from other provisions." *See*

---

[6] Specifically, Plaintiffs' affidavits state that

> [They] never received anything in the mail from Defendant about arbitration, or about any amendment or change in [their] agreement with [Defendant.] [They] understand that [Defendant] has said that it mailed an amendment to [them] concerning arbitration in 1999 or 2001. *Either [they] did not receive this mailing at all, or else it was not marked or identified as being an important change in, or waiver of, [their] legal rights about [their] credit card and [they] did not notice it in the mail.* If the 1999 or the 2001 mailing had been identified as important [they] would have opened it and read it. . . . Unless the envelope indicates that the communication is an important one relating to an existing account of [theirs], [they] do not open the envelope and simply throw what appears to be junk mail away.

(*Id*. at ¶ 4) (emphasis added).

14

*Rollins, Inc. v. Foster*, 991 F. Supp. 1426, 1434 (M.D. Ala. 1998); *see also Nobles v. Rural Cmty Ins. Servs.*, 122 F. Supp. 2d 1290, 1300 (M.D. Ala. 2000) (stating that "courts cannot single out arbitration clauses for discriminatory treatment").  For sure, to hold otherwise would violate the Supreme Court's conclusion that the FAA precludes "States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed upon the same footing as other contracts." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (internal quotations omitted) (holding that the FAA preempts a Montana statute that declared an arbitration clause unenforceable unless the contract contains underlined capital letters on the first page of the contract stating that it contains an arbitration provision).

    This court has rejected nearly identical arguments on the ground that the arguments were foreclosed by the Supreme Court's decision in *Doctor's Associates*.  *Taylor*, 325 F. Supp. 2d at 1312 (Thompson, J.) (identical argument); *Lawrence*, 343 F. Supp. 2d at 1110 (Thompson, J.) (same).  *See also Taylor v. Citibank USA, N.A.*, 292 F. Supp. 2d 1333, 1337 (M.D. Ala. 2003) (Albritton, J.) (plaintiff argued that arbitration agreement was on the fourth page of a notice of change of terms); *Billups v. Bankfirst*, 294 F. Supp. 2d 1265, 1269 (M.D. Ala. 2003) (Albritton, J.) (plaintiff argued that no one from the defendant bank called her attention to arbitration provision in credit card agreement); *Gipson v. Cross Country Bank*, 294 F. Supp.2d 1251, 1255 (M.D. Ala. 2003) (Albritton, J.) (same).  Accordingly, the court agrees with the analysis of Judges Thompson and Albritton, and concludes that this argument of Plaintiffs' affords them no relief from the arbitration provision.

   3.   *Assent to Cardmember Agreements*

Plaintiffs next argue that they did not assent to the arbitration provisions in their cardmemember agreements and assert that this is an issue for a jury to decide. This argument is not persuasive. This court has previously considered the question of whether the use of a credit card can be understood as indicating assent to be bound by the terms of a cardmember agreement, and held that credit card usage is sufficient to signal assent. *See e.g., Lawrence*, 343 F. Supp. 2d at 1111;[7] *Taylor*, 325 F. Supp. 2d at 1313. Accordingly, as it is undisputed that Plaintiffs used their credit cards after the cardmember agreements were amended to include the arbitration provision, this court finds that as a general matter of law, and as a matter of Alabama law, Plaintiffs' credit card use signaled their assent to the terms of the cardmember agreements. Furthermore, to the extent that the cardmember agreements at issue in this case are governed by Arizona law, other courts have held that Defendant's method of amending cardmembers agreements to include an arbitration provision does not violate Arizona law. *See, e.g., Hutcherson v. Sears Roebuck & Co.*, 793 N.E.2d 886, 894 (Ill. App. 2003) (applying Arizona substantive law and enforcing arbitration amendment).

   4.   *Illusory Agreement*

---

[7] In *Lawrence*, the court relied on its analysis in *Taylor*, 325 F. Supp. 2d at 1312-1314, in resolving this issue. In *Taylor*, the court first noted that the issue was one to be resolved by the court, not the arbitrator. 325 F. Supp. 2d at 1313. Thereafter, the court found that it was not unreasonable that the cardmember agreement between Taylor and the bank would provide that her use of the card amounted to her assent to the terms of the agreement because, under Alabama law, "a credit card holder's use of her card signals her assent to the terms of the credit card agreement." *Id*. (citing *SouthTrust Bank v. Williams*, 775 So.2d 184, 189 (Ala. 2000)).

Plaintiffs' next argue that the cardmember agreements between themselves and Defendant are illusory because they include provisions that allow Defendant to add provisions to the agreements unilaterally.  On numerous occasions, this court has rejected the same argument that Plaintiffs rely on here because it contravenes the *Prima Paint* rule that arguments that go to the existence of a contract as a whole are to be resolved by the arbitrator and not the court.[8]  *Taylor*, 325 F. Supp. 2d at 1314-1316; *Lawrence*, 343 F. Supp. 2d at 1111; *Taylor*, 292 F. Supp. 2d at 1338-40; *Billups*, 294 F. Supp. 2d at 1270-71; *Gipson*, 294 F. Supp. 2d at 1256-57.  This court finds no reason to stray from these holdings and concludes that it is foreclosed by *Prima Paint* from considering whether change-of-terms provisions in credit card agreements rendered those agreements illusory.  Consequently, that issue is one to be resolved by the arbitrator, not the court.

5.     *Motion for Jury Trial*

Plaintiffs separately filed a motion for a jury trial on the question of whether an agreement to arbitrate existed between them and Defendant.  The FAA provides that "[i]f the making of the arbitration agreement . . . be in issue, the party alleged to be in default may . . . demand a jury trial on such issue."  9 U.S.C.A. § 4.  To warrant a jury trial, the Eleventh Circuit has explained that the party seeking to avoid arbitration must "unequivocally deny

---

[8]  This argument is also unavailing because Alabama law explicitly allows credit card companies to amend cardmember agreements in exactly the manner provided for in Plaintiffs' cardmember agreements.  1975 Ala. Code § 5-20-5; *SouthTrust Bank v. Williams*, 775 So.2d 184, 190 (Ala. 2000).  The same is true in Arizona.  *See Hutcherson*, 793 N.E.3d at 900.  Thus, Defendant properly added the  arbitration provisions to Plaintiffs' cardmember agreements.

that an agreement to arbitrate was reached and must offer 'some evidence' to substantiate the denial." *Wheat, First Secs., Inc. v. Green*, 993 F.2d 814, 818 (11th Cir. 1993) (quoting *Chastain,* 957 F.2d at 854). The party challenging the arbitration provision must create a genuine issue of fact presenting "enough evidence to make the denial colorable." *Chastain*, 957 F.2d at 855.

Plaintiffs' motion for a jury trial is due to be denied because they have not created a genuine issue of fact as to whether arbitration agreements were reached between themselves and Defendant. As discussed above, the court finds that Plaintiffs received their cardmember agreements and assented to their terms. Furthermore, the court is precluded by *Doctor's Associates* from holding that the cardmember agreements did not sufficiently disclose the presence of the arbitration clause and precluded by *Prima Paint* from taking up the question of the supposed illusory nature of Defendant's promises in the cardmember agreements. Because nothing is left to present to a jury, Plaintiffs' motion for a jury trial is due to be denied.

B.    *Vindication of Statutory Rights*

Plaintiffs argue that, if they are required to go to arbitration, the provisions in their arbitration agreements barring class arbitration will prevent them from vindicating their rights under TILA and FCBA. This court addressed these precise arguments in *Billups*, 294 F. Supp. 2d at 1272-1273, and found that, based upon the Eleventh Circuit's holding in *Randolph v. Green Tree Fin. Corp.-Alabama*, 244 F.3d 814, 819 (11th Cir. 2001), a ban on

class actions is enforceable even if it precludes a plaintiff from utilizing class action procedures in vindicating statutory rights under TILA and FCBA.[9]  *See also Lawrence*, 343 F. Supp. 2d at 1112 (rejecting same argument based on *Randolph*).  There is no reason to reach a different conclusion here.

Plaintiffs next argue that the costs associated with arbitrating their claims in accordance with the arbitration provision in their cardmember agreements will effectively prevent them from vindicating their rights under the TILA and the FCBA.[10]  Thus, Plaintiffs argue, the arbitration provisions are unenforceable.[11]

As explained in *Taylor*, 325 F. Supp. 2d at 1316-19, this court has considered and rejected the very argument Plaintiffs are making.  The question before Judge Thompson in *Taylor* was whether the filing and hearing fees required by the National Arbitration Forum, the forum specified in the parties' arbitration clause, effectively prevented the plaintiff from

---

[9]  In *Randolph*, the Eleventh Circuit held that "a contractual provision to arbitrate TILA claims is enforceable even if it precludes a plaintiff from utilizing class action procedures in vindicating statutory rights under [the] TILA."  244 F.3d at 819.  In *Billups*, Judge Albritton relied on the Eleventh Circuit's reasoning in *Randolph* and similarly concluded that an arbitration clause is enforceable even though it prohibits the plaintiff from seeking classwide relief for her FCBA claim. 294 F. Supp. 2d at 1272-74.  Thus, *Billups* extended the holding of the Eleventh Circuit in *Randolph* to apply with equal force to FCBA claims.

[10]  It is important to note that Plaintiffs' first argument regarding the vindication of their statutory rights differs slightly from their second.  As stated above, in Plaintiffs' first argument they assert that the arbitration agreements at issue here actually bar class arbitration.  In their second argument, Plaintiffs contend that the costs of class arbitration are prohibitively high so as to effectively prevent Plaintiffs' from bringing a class action.

[11]  The court may properly resolve this argument under *Prima Paint* because it is directed at the arbitration provision itself and not at the cardmember agreement generally.  *See Taylor*, 325 F. Supp. 2d at 1316 n. 20.

bringing a class action, and thus, prevented her from vindicating her rights under TILA and

the FCBA.  Judge Thompson, relying on the Eleventh Circuit's decision in *Randolph,* found

that "even if Taylor is correct that the filing and hearing fees required by the NAF would

prevent her from bringing a class-action claim in arbitration, and even if the NAF rules

explicitly proscribe class-action arbitration, the court must still compel arbitration pursuant

to the agreement . . ." 325 F. Supp. 2d at 1318.  Judge Thompson observed that "[i]f an

arbitration agreement that flatly prohibits classwide arbitration of claims arising under the

TILA is enforceable [under *Randolph*], surely an arbitration provision that may have the

effect of preventing classwide arbitration is enforceable."  *Id*.  Thus, Judge Thompson

concluded that the fact that the arbitration provision in the cardmember agreement will

prevent Taylor from bringing a class-action lawsuit was not a reason to find the arbitration

provision unenforceable.  *Id*. at 1319.  There is no reason for this court to reach a different

conclusion in this case.  As such, the court concludes that Defendant's arbitration provision

does not prohibit Plaintiffs from vindicating their statutory rights under either the TILA or

FCBA.

C.   *Unconscionability*

     Plaintiffs' final argument is that the arbitration provisions in their cardmember

agreements are unconscionable under generally applicable Alabama contract law because

they effectively preclude them from bringing an action to enforce their rights.[12]  Citing

---

[12]  As noted previously, the cardmember agreements between Plaintiffs and Defendant have a
clause providing that Arizona law govern their interpretations.  However, Defendant does not argue

*Leonard v. Terminix Int'l Co.*, 854 So. 2d 529 (Ala. 2002), Plaintiffs argue that their arbitration agreements bar them from bringing class arbitrations and the costs of bringing their individual claims in arbitration will be greater than the amount they are likely to recover.  This argument is identical to the one made in *Taylor*.  *See* 325 F. Supp. 2d at 1319.

As discussed in *Taylor*, this court finds that the case *sub judice* is distinguishable from *Leonard*.[13]  Unlike in *Leonard*, there is no claim here that Plaintiffs' arbitration agreements limit the damages they can recover and no argument that their arbitration agreements limit their ability to recover their costs and fees.  Accordingly, this argument does not provide Plaintiffs with relief.  *See Taylor*, 325 F. Supp. 2d at 1321; *Billups*, 294 F. Supp. 2d at 1277 (finding that arbitration clause was not unconscionable under Alabama law because it did not limit any of the plaintiff's substantive remedies available under the TILA).

In conclusion, the court has considered all of Plaintiffs' arguments in opposition to arbitration and finds them to be without merit.  Because the arbitration agreements meet the requirements of 9 U.S.C. § 2, the court finds that they are enforceable.  As such, Plaintiffs' claims in their Complaint must be resolved by arbitration.  *See* 9 U.S.C. § 4.  Thus, as provided in 9 U.S.C. § 3, the court will stay these proceedings pending the outcome of

---

that Arizona's law of unconscionability should apply here.  Notwithstanding, other courts have found that, under Arizona law, such agreements are not unconscionable.  *See Hutcherson*, 793 N.E.2d at 897-899.

[13]  In *Leonard*, the Alabama Supreme Court held that an arbitration provision was unconscionable because it restricted the plaintiffs to a forum where the expense of pursuing their claims exceeded the amount in controversy.

arbitration.

## V. CONCLUSION

Accordingly, for the reasons stated above, it is hereby ORDERED that:

1.      The motion to stay the proceedings pending arbitration filed by Defendant

Sears on July 25, 2003 (Doc. # 11) is GRANTED.

2.      Plaintiffs are ENJOINED and RESTRAINED from failing to arbitrate their

claims against Defendant Sears.

3.      The motion for jury trial filed by Plaintiffs on September 8, 2003 (Doc. # 17)

is DENIED.

4.      Pursuant to 9 U.S.C. § 4, all parties to this litigation shall proceed with

arbitration on Plaintiffs' claims in the manner provided for in the Arbitration

Agreements;

5.      Pursuant to 9 U.S.C. § 3, this action be and the same is hereby STAYED

pending arbitration; and

6.      The parties shall file a jointly-prepared status report detailing the status of

arbitration every first Tuesday of each month, beginning June 7, 2005.

DONE this 20th day of April, 2005.


_____
/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE